Graves, J.:
On tbe first of June, 1874, these parties agreed in writing as follows: “Memorandum of agreement made and entered into between the Detroit Frear Stone Works and Orpheus White, both of Detroit. Said White agrees to take charge of the company’s stone-yard, as superintendent, during the continu *75 anee of this contract, to furnish all the moneys required to carry on the business of the company during said time, to fulfill all the conditions of the lease under which the company hold said yard. Said White shall have no authority to bind the company by any contracts whatever, or to hire any men for or purchase articles in the name of the company. He also agrees to make a full statement of all his expenses, sales, contracts, etc., and in general all the business done by him, to the officers of said company, when required by them. The company agree that said White shall have and receive in full for all the *money, labor, etc., put into said business, the net profits arising from said business during the continuance of this contract. It is further agreed that if said White shall violate this agreement, or any condition of it, the company may at their option discharge him at once and declare the contract at an end, in which case the net profits of the company to the time of said termination and discharge shall be in full for services, advances and damages which said White shall sustain by reason of said discharge. This contract shall remain in force for one year from its date.”
White began and for some time went on under this contract at the yard mentioned in it, and then, suddenly, and without the company’s assent, shifted to another place and carried with him all or most of the moulds and other things provided for carrying on work, and at such new place began operations in his own name. He had taken a lease of the new site in his own name. The company got an interview with him and protested against the change made and his assumption of affairs in his own name, and he finally turned the new lease over to the company and professed himself satisfied to go on thereafter in the way contracted for. At this time it would seem that White set up no claim, or at least insisted upon none, that he had any individual or adverse right to the effects. He seemed to recognize that he was handling what belonged to the company, and not to himself.
Subsequently, however, he proceeded to shift the concern again without the company’s consent, and they then brought replevin for several pieces of Frear stone and a number of *76 moulds, and these things were taken on the writ and delivered to the company.
At the trial White insisted that this property was his, and claimed that it had been produced with his means and labor. He admitted, however, that it was produced in the course of the business conducted under the contract. The company gave evidence tending to show that the moulds *and stone were of their stock, and moreover that White had acknowledged their right to the property.
The court required the jury to find for the defendant, and judgment was entered for him for the full value of the property taken. This was error. The contract did not vest ownership in him, and whatever possession and control it gave him, it was as an agent of the company, and not as owner of the concern. He was to use his skill and service in the enterprise, and give it character and exjjansion, and was to supply the labor and necessary means, and to have, in satisfaction therefor, the net profits. He Avas forbidden to involve the company in any way, and it was rendered unnecessary for him to do so. He was to provide, and if he fulfilled-his agreement, all proper things would be supplied by himself. Yet in supplying the labor and means to carry on the enterprise according to his agreement, he was not procuring articles to be held as absolutely his own. They would still belong to the company, and be subject to disposition as provided by the contract.
In getting possession under the contract, he was bound to accept the net profits for his services and advances, and could not assert legal ownership of the effects instead. The evidence tends to show that after the first removal White recognized the company as principal and owner. Certainly he could not repudiate his contract relation, as manager on terms, and not oivner, and make himself owner, by carrying away the products of the enterprise.
The case should have been submitted to the jury upon the facts, under proper instructions. There are some other questions, but they will not be likely to come up again.
*77 Judgment must be reversed, with costs, and a new trial ordered.
The other justices concurred.